# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR THREE ACCOUNTS SERVICED BY OATH HOLDINGS INC. FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | No.  19-pr-169<br><br>**Filed Under Seal** |

Reference:    USAO    Ref.    #    ████████    Subject    Email    Accounts:
████████████████; ████████████████; ████████████████

### FIRST APPLICATION

The United States of America, moving by and through AUSA Zia Faruqui, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the email accounts identified as ██████████████, ██████████████, and ██████████ ("SUBJECT ACCOUNTS"), which are believed to be used by ████████ ██████████ who are the subjects of the investigation discussed below.  In support of this application, the United States asserts:

1.     This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen-trap devices.

2.     Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a

certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

JURISDICTION

6. This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127. 18 U.S.C. § 3122(a)(1). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

ADDITIONAL INFORMATION

7. Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

-2-

8.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

9.     In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications, as described below.

10.     The Internet is a global network of computers and other devices.  Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address.  This number is used to route information between devices.  Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response.  An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.  There are two types of IP addresses: dynamic and static.  A static IP address is one that is permanently assigned to a given computer on a network.  With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.     A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves.  The equipment that connects a computer or other device to the network is commonly referred to as a network adapter.  Most network adapters have a Media Access Control ("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number.  An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers.  Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter.  Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12.     On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets.  Generally, a single communication is sent as a series of packets.  When the packets reach their destination, the receiving device reassembles them into the complete communication.  Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data.  The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13.     In addition, different Internet applications are associated with different "port numbers," or numeric identifiers.  The port number is transmitted along with any communication using that application.  For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

-4-

14.     An email message has its own routing header, in addition to the source and destination information associated with all Internet data.  The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields.  Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields.  The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls because they indicate both origin and destination(s).  They can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's contents.

<u>THE RELEVANT FACTS</u>

15.     The Federal Bureau of Investigation ("FBI") is investigating the illicit transfer of ████ petroleum to third party countries in violation against sanctions against ████ and the payment of these shipments in U.S. dollars, which would require a license from the Department of Treasury Office of Foreign Assets Control (OFAC), which is located in the District of Columbia. The investigation concerns possible violations of, *inter alia*, the International Economic Emergency Powers Act (IEEPA), in violation of 50 U.S.C. §§ 1701-1707, and money laundering, in violation of 18 U.S.C. § 1956.  The FBI's investigation has determined that ████ in managing shipments of oil from ████ carried on the ████, has participated in a scheme to violate Executive Order (EO) 13846, which made it illegal to purchase, acquire, sell, transport, or market petroleum products from ████ after November 5, 2018, without an appropriate license from OFAC.

16.     On August 6, 2018, the President issued EO 13846, which made it illegal to purchase, acquire, sell, transport, or market petroleum products from Iran after November 5, 2018, without an appropriate license from OFAC.  After this EO was implemented, the Iranian Oil Minister, Bijan Namdar Zanganeh, said in an interview, "We have unofficial or unconventional

sales, all of which are secret, because if they are made known America would immediately stop them."

17.    According to publically available industry data, the ████ is a large petroleum tanker capable of carrying ████████████████████████ of crude oil. Given its size, the ████ is required to use the automatic identification system (AIS), which is used for collision avoidance, identification and vessel locational data. Law enforcement is aware that tankers operating on behalf of sanctioned entities turn this safety system off to conceal their illicit port calls. In particular, this is a common practice when doing business with ████████ which are both subject to similar international sanctions. ████ has been involved with some of the secret, unconventional sales, which ████████████████ In addition to illegally transferring ████ petroleum, law enforcement has also discovered that this petroleum tanker may have used fraudulent documents when conducting this activity.  Finally, financial records show that U.S. dollar wires transited through the United States for the benefit of the ████ near the time of the illicit oil transfers by the ████.

18.    Based on the AIS data, publicly available records, and bank records, law enforcement has documented illegal activities of the ████████████████████ ████████████ (which has provided and manned a crew for the ████ on multiple voyages), ████ (a member of ████ conglomerate ████████████████ ██  For example, AIS data revealed that the ████ turned off its AIS in or about late November 2018, while near an ████ port.  The ████ later reactivated its AIS as it headed away from that area, after which it conducted ship-to-ship transfers consistent with an oil smuggling scheme. Financial records revealed that approximately four weeks later, a U.S. dollar transaction was

conducted via a front company that referenced the ███████ . The parties failed to obtain the requisite OFAC license before conducting this transaction.

19.     Investigators discovered a publically available LinkedIn account for ███████ ███████ in which she lists that she is the ████████████████████████████ ███████████████ The subpoena returns further revealed that this LinkedIn account was registered by ████████████████ uses Subject Account 1 (████████████████████).



20.     Investigators further discovered a publically available information for ███████ ███████ in which she lists that she serves as ████████████████████based shell company, ███████████ uses Subject Account 2 (███████████████), as well Subject Account 3 (████████████). Bank records revealed that ████████████was a counterparty to a multi-million U.S. dollar wire transaction that contained a referenced to the ███████

21.     To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from, the SUBJECT ACCOUNTS.

22.     The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and with each communication to or from, the SUBJECT ACCOUNTS, including the date, time, and duration of the communication, and the following, without geographic limit:

- ▪ IP addresses, including IP addresses associated with access to the SUBJECT ACCOUNTS;

- ▪ MAC addresses, including MAC addresses associated with access to the SUBJECT ACCOUNTS;

- Headers of email messages, including the source and destination network addresses, as well as routes of transmission and size of the messages, but not content located in the headers, such as subject lines;

- Any unique identifiers associated with the device or devices used to access the SUBJECT ACCOUNTS; and

- The number and size of any attachments associated with access to, and communications to or from, the SUBJECT ACCOUNTS.

## GOVERNMENT REQUESTS

23.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each access to, and each communication to or from, the SUBJECT ACCOUNTS, to include the date, time, and duration of the communication, without geographic limit.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

24.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

25.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order Oath Holdings, LLC. (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the

Agency, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

26.     The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNTS, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the SUBJECT ACCOUNTS.

27.     The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

28.     The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider.  The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes.  Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties.  At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as

persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

29.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

30.     The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

31.     The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and the Court's Order upon request, and provide copies of the Order to the Agency upon request.

32.     The foregoing is based on information provided to me in my official capacity by agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 21st day of June 2019.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845


*/s/ Zia M. Faruqui*
Zia M. Faruqui
D.C. Bar No. 494990
Assistant U.S. Attorney
United States Attorney's Office
555 4th Street, N.W., Room 4820
Washington, D.C. 20530
(202) 252-7117
zia.faruqui@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN RE APPLICATION OF USA FOR PRTT ORDER FOR THREE ACCOUNTS SERVICED BY OATH HOLDINGS INC. FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956**

No.   19-pr-169

**Filed Under Seal**

### ORDER

AUSA Zia Faruqui, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the email accounts identified as ▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮ ("SUBJECT ACCOUNTS") which are believed to be used by the persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of the International Emergency Economic Power Act (IEEPA), 50 U.S.C. § 1701 et seq., and the money laundering statute, 18 U.S.C. § 1956(h).  The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the SUBJECT ACCOUNTS, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses, including IP addresses associated with access to the SUBJECT ACCOUNTS;

- MAC addresses, including MAC addresses associated with access to the SUBJECT ACCOUNTS;

- Headers of email messages, including the source and destination network addresses, as well as routes of transmission and size of the messages, but not content located in the headers, such as subject lines;

- Any unique identifiers associated with the device or devices used to access the SUBJECT ACCOUNTS; and

- The number and size of any attachments associated with access to, and communications to or from, the SUBJECT ACCOUNTS.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that Oath Holding Inc. (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNTS, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNTS;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States

Attorney's Office with three certified copies of this application and Order upon request, and shall

provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise

ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).



‾‾‾‾‾‾
Date                                                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                                                 HON. ROBIN M. MERIWEATHER
                                                                 United States Magistrate Judge

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation:



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR THREE ACCOUNTS SERVICED BY OATH HOLDINGS INC. FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 1956 | No.  19-pr-169 <br><br> **Filed Under Seal** |

## ORDER

AUSA Zia Faruqui, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the email accounts identified as ███████████████, ███████████, and ███████████ ("SUBJECT ACCOUNTS") which are believed to be used by the persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of the International Emergency Economic Power Act (IEEPA), 50 U.S.C. § 1701 et seq., and the money laundering statute, 18 U.S.C. § 1956(h).  The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the SUBJECT ACCOUNTS, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses, including IP addresses associated with access to the SUBJECT ACCOUNTS;

- MAC addresses, including MAC addresses associated with access to the SUBJECT ACCOUNTS;

- Headers of email messages, including the source and destination network addresses, as well as routes of transmission and size of the messages, but not content located in the headers, such as subject lines;

- Any unique identifiers associated with the device or devices used to access the SUBJECT ACCOUNTS; and

- The number and size of any attachments associated with access to, and communications to or from, the SUBJECT ACCOUNTS.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that Oath Holding Inc. (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNTS, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNTS;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States

Attorney's Office with three certified copies of this application and Order upon request, and shall

provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise

ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Digitally signed by
Richard A. Lloret
Date: 2019.06.24 14:24:19
-04'00'

_____
Date

HON. ROBIN M. MERIWEATHER
United States Magistrate Judge

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation:

