# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No.   18-pr-381 <br><br> **Filed Under Seal** |

*Reference:  USAO Ref. #* ███████  *Subject Phone Number(s):* █████████

### *FIRST APPLICATION*

The United States of America, moving by and through Sumit Mallick, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from cellular telephone number (███████ ████ (hereinafter "Subject Phone Number"), listed to ████████████████ ████████████ which is believed to be used by ███████████ who is one of several subjects of the investigation as discussed further below**.**  In support of this application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen-trap devices.

2.      Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3.      The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.      The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5.      The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

<div align="center">JURISDICTION</div>

6.      This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127.  18 U.S.C. § 3122(a)(1).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 3127(2)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

<div align="center">ADDITIONAL INFORMATION</div>

7.      Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts.  The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

8.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

9.      In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications, as described below.

10.      The Internet is a global network of computers and other devices.  Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address.  This number is used to route information between devices.  Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response.  An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.  There are two types of IP addresses: dynamic and static.  A static IP address is one that is permanently assigned to a given computer on a network.  With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.      A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves.  The equipment that connects a computer or other device to the network is commonly referred to as a network adapter.  Most network adapters have a Media Access Control

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12.     On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13.     In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

14.     A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit

or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

15.     In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").  When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

16.     In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data).  These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

17.     A cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

18.     Cell phones can connect to the Internet via the cellular network.  When connecting through the cellular network, Internet communications sent and received by the cell phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cell phone also contain the IP address associated with that cell phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

<u>THE RELEVANT FACTS</u>

19.     The United States government, including the Agency, is investigating the distribution of illegal controlled substances in ███████████████████  The investigation concerns possible violations of, Title 21, United States Code, Section 841(a)(1).  The targets of the investigation include among others, ██████████████████████████ ████████████, others as yet unknown or not fully identified.  ███████████████ ████████████████████████████████████████ ██████ has used the Subject Phone Number to facilitate the narcotics transactions.

20.     The conduct being investigated involves use of the Subject Phone Number. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Subject Phone Number.

21.     The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- ▪ IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

<u>GOVERNMENT REQUESTS</u>

22.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, without geographic limit.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

23.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

24.     The United States further requests that the Court order, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the Agency,

pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

25.    The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the Subject Phone Number.

26.    The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

27.    The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider.  The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes.  Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties.  At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as

persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

28. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

29. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

30. The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and the Court's Order upon request, and provide copies of the Order to the Agency upon request.

31. The foregoing is based on information provided to me in my official capacity by agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 12th day of December, 2018.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845


_____/s/_____
SUMIT MALLICK
Assistant United States Attorney
MA Bar 678534
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W., Room 4814
Washington, D.C. 20530
Office: (202) 252-6992
Sumit.Mallick@usdoj.gov

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No. 18-pr-381 <br><br> **Filed Under Seal** |

### ORDER

Sumit Mallick, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ███████████ (hereinafter "Subject Phone Number"), listed to ████████████████ ███████████████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1). The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

-2-

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise

ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).


_____
United States Magistrate Judge

## ATTACHMENT A

Person(s) identified as subject(s) of investigation:

███████████████████████████████████████████████

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No. 18-pr-381<br><br><u>Filed Under Seal</u> |

## <u>ORDER</u>

Sumit Mallick, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ███████████ (hereinafter "Subject Phone Number"), listed to ██████████████████, ██████████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1). The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

-2-

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Angela D. Caesar
Digitally signed by Angela D. Caesar
Date: 2018.12.13 11:56:02 -05'00'

2018.12.13 10:42:34 -05'00'

_____
United States Magistrate Judge

-4-

## ATTACHMENT A

Person(s) identified as subject(s) of investigation:

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No.  18-pr-381<br><br>**Filed Under Seal** |

*Reference:  USAO Ref. #* ████████     *Subject Phone Number(s):* ████████

## *SECOND APPLICATION*

The United States of America, moving by and through Sumit Mallick, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, extending the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from cellular telephone number (████████ ████ hereinafter "Subject Phone Number"), listed to ████████████████ ████████████ which is believed to be used by ████████ who is one of several subjects of the investigation as discussed further below.  In support of this application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 extending the installation and use of pen-trap devices.

2.      Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3.     The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.     The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5.     The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

<div align="center">JURISDICTION</div>

6.     This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127.  18 U.S.C. § 3122(a)(1).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 3127(2)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

<div align="center">ADDITIONAL INFORMATION</div>

7.     Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts.  The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

8.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9.     In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

10.     The Internet is a global network of computers and other devices. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address. This number is used to route information between devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content. There are two types of IP addresses: dynamic and static. A static IP address is one that is permanently assigned to a given computer on a network. With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.     A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13. In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

14. A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit

-4-

or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

15.     In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").  When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

16.     In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data).  These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

17.     A cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

18.     Cell phones can connect to the Internet via the cellular network.  When connecting through the cellular network, Internet communications sent and received by the cell phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cell phone also contain the IP address associated with that cell phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

### THE RELEVANT FACTS

19.     The United States government, including the Agency, is investigating the distribution of illegal controlled substances in ███████████████████  The investigation concerns possible violations of, Title 21, United States Code, Section 841(a)(1).  The targets of the investigation include among others, ████████████████████████ ███████████████ others as yet unknown or not fully identified.  ██████████████ █████████████████████████████████████████████████████████ ████████ has used the Subject Phone Number to facilitate the narcotics transactions.

20.     The conduct being investigated involves use of the Subject Phone Number. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Subject Phone Number.

21.     The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- ▪ IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

<u>GOVERNMENT REQUESTS</u>

22.     For the reasons stated above, the United States requests that the Court enter an Order extending the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, without geographic limit.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

23.     The United States further requests that the Court extend the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

24.     The United States further requests that the Court order, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the Agency,

pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

25.     The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the Subject Phone Number.

26.     The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

27.     The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider.  The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes.  Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties.  At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as

persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

28. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

29. The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

30. The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and the Court's Order upon request, and provide copies of the Order to the Agency upon request.

31. The foregoing is based on information provided to me in my official capacity by agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of February, 2019.

                              Respectfully submitted,

                              JESSIE K. LIU
                              United States Attorney
                              DC Bar No. 472845


                              _____/s/_____
                              SUMIT MALLICK
                              Assistant United States Attorney
                              MA Bar 678534
                              Violent Crime and Narcotics Trafficking Section
                              555 4th Street, N.W., Room 4814
                              Washington, D.C. 20530
                              Office: (202) 252-6992
                              Sumit.Mallick@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No. 18-pr-381 <br><br> **Filed Under Seal** |

## ORDER

Sumit Mallick, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order extending the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ███████████, (hereinafter "Subject Phone Number"), listed to ████████████████ ████████████████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1). The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to extend the installation and use of pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise

ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).


_____
United States Magistrate Judge

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation:

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR
PRTT ORDER FOR ONE CELLULAR
TELEPHONE SERVICED BY T-MOBILE
FOR INVESTIGATION OF VIOLATION
OF 21 U.S.C. 841

PR No. 18-pr-381

**Filed Under Seal**

## <u>ORDER</u>

Sumit Mallick, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order extending the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ████████ (hereinafter "Subject Phone Number"), listed to ████████ ████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1). The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to extend the installation and use of pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Digitally signed by G. Michael Harvey
Date: 2019.02.06 16:20:44 -05'00'

_____
United States Magistrate Judge

Angela D. Caesar
Digitally signed by Angela D. Caesar
Date: 2019.02.07 07:09:39 -05'00'

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation:

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No.   18-pr-381

Filed Under Seal |
|---|---|

*Reference:  USAO Ref. #* ████████    *Subject Phone Number(s):* ████████

### *THIRD APPLICATION*

The United States of America, moving by and through William E. Schurmann, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, extending the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from cellular telephone number ████████ (hereinafter "Subject Phone Number"), listed to ████████ ████████ which is believed to be used by ████████ who is one of several subjects of the investigation as discussed further below**.**  In support of this application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 extending the installation and use of pen-trap devices.

2.      Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3.     The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.     The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5.     The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

<div align="center">JURISDICTION</div>

6.     This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127.  18 U.S.C. § 3122(a)(1).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 3127(2)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

<div align="center">ADDITIONAL INFORMATION</div>

7.     Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts.  The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

8.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a

<div align="center">-2-</div>

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

9.      In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications, as described below.

10.      The Internet is a global network of computers and other devices.  Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address.  This number is used to route information between devices.  Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response.  An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.  There are two types of IP addresses: dynamic and static.  A static IP address is one that is permanently assigned to a given computer on a network.  With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.      A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves.  The equipment that connects a computer or other device to the network is commonly referred to as a network adapter.  Most network adapters have a Media Access Control

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12.     On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13.     In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

14.     A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit

or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

15.     In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").  When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

16.     In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data).  These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

17.     A cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

-5-

18.     Cell phones can connect to the Internet via the cellular network.  When connecting through the cellular network, Internet communications sent and received by the cell phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cell phone also contain the IP address associated with that cell phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

<u>THE RELEVANT FACTS</u>

19.     The United States government, including the Agency, is investigating the distribution of illegal controlled substances in ███████████████████████  The investigation concerns possible violations of, Title 21, United States Code, Section 841(a)(1).  The targets of the investigation include among others, ████████████████████████ ███████████████ others as yet unknown or not fully identified.  ████████████████ ████████████████████████████████████████████████████ ███████ has used the Subject Phone Number to facilitate the narcotics transactions.

20.     The conduct being investigated involves use of the Subject Phone Number. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the Subject Phone Number.

21.     The pen-trap devices sought by this application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- ▪ IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

-6-

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

## GOVERNMENT REQUESTS

22. For the reasons stated above, the United States requests that the Court enter an Order extending the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

23. The United States further requests that the Court extend the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

24. The United States further requests that the Court order, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the Agency,

pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

25.     The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the Subject Phone Number.

26.     The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

27.     The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider. The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes. Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties. At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as

persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

28.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

29.     The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

30.     The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and the Court's Order upon request, and provide copies of the Order to the Agency upon request.

31.     The foregoing is based on information provided to me in my official capacity by agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 1st day of April, 2019.

<div style="margin-left: 40%">

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845


_____/s/_____
WILLIAM SCHURMANN
D.C. Bar No. 991284
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7725
William.Schurmann@usdoj.gov

</div>

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No. 18-pr-381<br><br>**Filed Under Seal** |

## ORDER

William E. Schurmann, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order extending the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ██████████ (hereinafter "Subject Phone Number"), listed to ███████ ███████████████████████████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1). The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to extend the installation and use of pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

_____
United States Magistrate Judge

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation:

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE CELLULAR TELEPHONE SERVICED BY T-MOBILE FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | PR No. 18-pr-381 <br><br> **Filed Under Seal** |

## <u>ORDER</u>

William E. Schurmann, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order extending the installation and use of pen registers and trap and trace devices ("pen-trap devices") on cellular telephone number ██████████ (hereinafter "Subject Phone Number"), listed to ████████ ████████████████████████████████ and believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Section 841(a)(1).  The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to extend the installation and use of pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Subject Phone Number, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the Subject Phone Number, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

- IP addresses of any websites or other servers to which the cell phone device or devices is/are connected; and

- Source and destination telephone numbers and email addresses.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that T-Mobile (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the named Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the Subject Phone Number, including changes to subscriber information, and to provide prior notice to the Agency before terminating or changing service to the Subject Phone Number;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise

ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Angela D. Caesar

Digitally signed by Angela D. Caesar
Date: 2019.04.02 06:33:05 -04'00'

Deborah A. Robinson

Digitally signed by Deborah A. Robinson
Date: 2019.04.01 18:01:03 -04'00'

_____
United States Magistrate Judge

**ATTACHMENT A**

Person(s) identified as subject(s) of investigation: